# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

**UNITED STATES OF AMERICA**
**Plaintiff**

**vs.**

**VERNON B. ROLLINS**　　　　　　　　　　　3:08CR30137-001-DRH
a/k/a "Red"
**Defendant.**

## SENTENCING ORDER

**Herndon, Chief Judge:**

This Order is to memorialize and supplement the Court's statements made when it imposed the sentence in open court on defendant Vernon B. Rollins on May 8, 2009.

This judge acknowledged during court that his obligation was to fashion an individualized sentence in examining all of the factors under 18 U.S.C. §3553(a). Further, that while the Sentencing Guidelines must be considered, they must not be considered mandatory as they are only advisory. In so considering, this judge specifically pointed out that he would not presume the reasonableness of a guideline sentence and would examine the full sentencing range pursuant to the statute from below the guideline, to within the guideline, and above the guideline. The Court acknowledged that it had the discretion to disregard the disparity between crack cocaine sentences and powder cocaine sentences and adjust this sentence downward if he so chose.

The Court found in this case that for all Counts, one through three, the statutory range of custody was not more than twenty years in prison, the statutory range of supervised release after incarceration was at least three years for all three counts. Probation was available, statutorily, for a period of one to five years. The statutory fine range was no more than a million dollars per count. Within the guidelines, which after taking evidence on a contested issue of relevant conduct, the Court found the custodial range to be one hundred thirty-five months minimum to one hundred sixty-eight months on the high side. This based on a total offense level of thirty-three and a criminal history category of a I. The guideline term of supervised release was three years, and no eligibility for probation. The fine range was found to be $17,500 to $3,000,000. Of course, the special assessment was found to be the obligatory $100 per felony count and the Court did assess a total of $300.00 in that regard.

The case before the Court was difficult to assess for sentencing purposes. The statute directs the court to examine the terms of the nature and circumstances of the offense and the seriousness of the offense, if relevant. Here, the Court finds that they are relevant and that the elements of the offense are certainly very serious. The Defendant spoke eloquently to the Court and asserted that he only sold to addicts on the street. That he fueled the addiction of people on the street is not something to brag about, but the Court takes his statement to mean he was not a "big time" dealer of the ilk that put him in the position of a king pin or middle man selling to other dealers in large quantities. Nonetheless, as this Court has stated

many times in open court, the communities of this district and particularly the lower socio-economic groups within the larger population centers of the district have been devastated by certain drugs in particular; crack is one.  People become addicted to crack and are compelled to spend money they have precious little of to maintain that addiction rather than on what they need like, food, rent, mortgage payments, children's needs, and so on.  Thus, if one were to look at only these factors, a very serious sentence would be called for and it would be difficult to temper it, certainly to justify anything less than that called for by the guidelines.

Further, the Court must render a sentence that will afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant.  Defense Counsel, a seasoned lawyer who has represented many accused offenders before this judge and, likely, thousands of others in courts in this metro, bi-state area and other states, asserts that he believes in this client.  He believes this client is the guy who "gets the message."  He does not think this judge or any colleagues in this district will see Mr. Rollins back for a criminal offense.  The Defendant, whose eloquence was already alluded to, in his statement of allocution spoke of his remorse and the mistakes he made.  He addressed his attempts to better himself with classes in the county lock-up and how anxious he was to further his education while in the federal prison system.  He was believable and convincing in his remarks.  At the end of his statement he asked for a minute to turn and address the family members in attendance as he turned to them from his place at the podium to tearfully beg their forgiveness for his mistake in judgment and for what

he had put them through.

It is always hard to see into the future and there is no way to know until the defendant, as his own first line of defense between freedom and further incarceration, demonstrates what choices he will make while on supervised release, but it appears, at the outset, that Mr. Shostak's arguments have the upper hand. AUSA Norwood would argue that with all the pending cases against the Defendant in state system, such a prediction is unlikely. He suggests the Defendant's history and characteristics are predictors of a future of further trouble. The Court sides with the defense on the future factors and finds that deterrence and protecting the public are factors that are of little to no concern in this case, but this leads us to a discussion of history.

This Court cannot help but take umbrage with the state system at this stage and wonder why more was not happening there. In paragraph 34 of the PSR, there are no less than three felony cases, four misdemeanor cases, and two serious traffic cases pending. Serious charges all, they should have been resolved prior to this matter coming to a conclusion, or even being indicted. Both Congress and this judge put a great deal of importance on the history and characteristics of the defendant who stands before the Court to be sentenced. It makes a great deal of difference to the Court if it is sentencing someone who has no criminal history essentially versus someone who has been guilty of unlawful vehicular invasion, unlawful delivery of a controlled substance within 1,000 feet of a school, aggravated discharge of a firearm, three possession convictions for cannabis, driving on a

revoked license and driving on a suspended license. If he is guilty of all of those criminal offenses, he is a career criminal by description if not by guideline qualification. Likewise, if the Defendant is not guilty of those charges, they should be cleared up. The Government argued that the pending charges could be used against the Defendant on the theory that no one is so unlucky as to be charged so often when not guilty. Apparently, the "when there is smoke there's fire" theory. To be fair, the Government did couple the argument with the Court's relevant conduct finding that was based on a series of offenses that were years in the period of offending. The Defendant personally argued in his discussion with the Court that he thought he was entitled to the presumption of innocence on non-convicted charges. The Court finds the Defendant has the better position and will not presume guilt.

As alluded to above, the Court did make a finding that beginning at least as far back as 2005, the Defendant was engaging in a series of offenses (selling crack cocaine) such that his sales throughout time could be counted for purposes of relevant conduct. While this is, in part, historical the Court looks to it as part of the nature and circumstances of the offense.

As far as history and characteristics is concerned, this Defendant has only a single conviction for criminal trespass and no information was provided from the county of conviction, except that it is known that Defendant received a sentence of one year of conditional discharge for this misdemeanor. It, therefore, does not appear to be an infraction of serious proportions. Consequently, even though the

Defendant did not qualify for safety valve treatment in this case because he chose not to talk with the authorities about his case and he was seen by one of his customers with a gun on his lap in the car during a drug transaction, the Defendant is before the Court with all the other attributes of a first offender.

What, then, will promote respect for the law and provide just punishment for the offenses at bar? The Defendant asks that the Court sentence him to seven years in prison. He believes that will be adequate and refers to an offer made by the Government had he agreed to drop his objections and entered into an appeal waiver. The Government suggests that given the Defendant's long time drug dealing and pending charges, a mid-guideline range sentence (151 months) would be most appropriate. The Court in examining the factors above and relying on the findings made, in making every effort to individualize the sentence at bar, while addressing the factors of the statute and looking to the maximum sentence of the offense statute, twenty years, the Court determined that a sentence at one-half of that maximum (120 months) was reasonable. A sentence at the level requested by the Government or within the guideline range for someone who, by the Court's finding has already met the needs of deterrence and protecting the public from further crimes, is too great. However, a sentence as low as that asked for by the Defendant is insufficient to reflect the nature and circumstances of the offense, the seriousness of the offense, promote respect for the law and above all provide just punishment for the offense. While the Court declines, in this case, to lower the sentence for the purpose of reducing the crack disparity, this Defendant was a long time crack dealer,

even by his own account, to addicts on the street, a lower sentence is justified because of the lack of a meaningful criminal history and the Defendant's demonstrated rehabilitation and remorse.

Accordingly, the Defendant was sentenced to one hundred twenty months incarceration (120 months) per count to run concurrent, three (3) years supervised release per count to run concurrent, two hundred fifty dollars ($250) fine per count, and one hundred dollars ($100) special assessment per count.

**IT IS SO ORDERED.**

Signed this 11th day of May, 2009.

/s/ David R Herndon

**Chief Judge
United States District Court**